## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SUSAN MICHELLE H.,[1]                              )
                                                   )
                        Plaintiff,                 )
                                                   )        CIVIL ACTION
v.                                                 )
                                                   )        No. 21-2131-JWL
KILOLO KIJAKAZI,[2]                                )
Acting Commissioner of Social Security,            )
                                                   )
                        Defendant.                 )
_____            )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to §§ 1602, and 1614, Title XVI of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

I.      Background

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSI benefits on Ocrtober 1, 2018.  (R. 12, 227).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in evaluating whether Plaintiff's condition meets or medically equals the severity of a Listed impairment, in evaluating the medical opinions and prior administrative medical findings, and in assessing Plaintiff's residual functional capacity (RFC).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in <u>Bowling</u>)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

3

claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or medically equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in the order presented in Plaintiff's Social Security Brief.

## II.   Step Three, Listed Impairments

Plaintiff argues:

that she meets the Listing [1.04], showing objective medical evidence that she has osteoarthritis and DDD, resulting in a compromised spinal cord; nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising test; and spinal arachnoiditis confirmed by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours. (Tr. at 407-9, 439, 441-3, 445, 447-8, 450-3, 455-66, 472-4, 476, 478-9, 483, 488, 498, 508, 510-1, 514-6, 550-69, 571, 579-81, 586, 596, 598-600, 604-6, 608-9, 611-2, 614-5, 617-8, 623-4, 626-31, 640, 644-5, 651, 660, 692, 696, 698-700, 703, 705-7, 711-4, 717, 719-20).

(Pl. Br. 21).  Plaintiff also argues she

meets the B criteria [of Listings 12.04, 12.06, and 12.08] because she has marked limitations in interacting with others, concentrating, persisting, or maintaining pace, adapting or managing herself.  (Tr. at 39, 40, 49, 50, 51, 53, 284, 286, 287, 288, 303, 318, 323, 324, 338, 434, 435, 469, 470, 649, 660, 673).  Plaintiff was fired from two jobs and was charged with assault and battery for incidents where she blacked out.  (Tr. at 51, 53, 284, 287-288, 303, 318, 324, 338).  She cannot persist in most activities for more than a few minutes, or an hour at the most.  (Tr. at 41, 48, 53-4, 284, 287, 291, 295, 303, 318, 320, 321, 332, 334, 335, 337, 339, 441, 473, 474, 604).  She also heavily relies on others, including medical professionals, her boyfriend, and a friend to manage herself and her daily life.  (Tr. at 37, 53-4, 57, 283-5, 287, 295, 319-20, 333-5, 349, 644).

Lastly, Plaintiff also meets the C criteria.  Her mental disorders are serious and persistent.  (Tr. at 54, 64-65, 285, 286-287, 295, 303, 321, 322, 335, 404, 407-9, 411-2, 416-8, 420, 425-6, 430, 434-5, 439, 441, 445, 450, 455, 462, 465-6, 469-70, 478, 483, 498, 501, 510, 514-5, 550-3, 555-6, 559-68, 586, 589, 598, 604, 623-6, 629-30, 640-2, 644-6, 649-52, 656, 660, 665-6, 673, 675, 678, 681-4, 687, 696, 703, 711, 717).  She has medically documented history of the existence of her mental disorders over a period of more than two years, and there is evidence of both medical treatment, mental health therapy, psychosocial supports, and a highly structured setting that is ongoing and that diminishes the symptoms and signs of her mental disorder.  (Tr. at 37, 53-4, 57, 64-65, 283-5, 285, 286-287, 295, 303, 319-20, 321, 322, 333,-5, 349, 404, 407-9, 411-2, 416-8, 420, 425-6, 430, 434-5, 439, 441, 445, 450, 455, 462, 465-6, 469-70, 478, 483, 498, 501, 510, 514-5, 550-3, 555-6, 559-68, 586, 589, 598, 604, 623-6, 629-30, 640-2, 644-6, 649-52, 656, 660, 665-6, 673, 675, 678, 681-4, 687, 696, 703, 711, 717).

Id. at 22-23.

5

The Commissioner argues that none of the evidence cited in Plaintiff's argument regarding Listing 1.04 supports her assertion.  She continues, "None of these medical records showed a compromised nerve root or spinal cord, nor spinal arachnoiditis," and "Plaintiff's claims about the evidence are not even arguably true."  (Comm'r Br. 5).

Regarding the mental disorder listings at issue, the Commissioner accepts the paragraph A criteria are met but argues, "None of [Plaintiff's] cited records undermines the ALJ's conclusions.  Some are opinions that the ALJ determined were unpersuasive (Tr. 434-35, 469-70).  Many support the ALJ's reasoning."  (Comm'r Br. 8).  She also argues the record evidence does not support Plaintiff's claim she meets the paragraph C criteria.

**A.**      **Listing 1.04**

On October 27, 2020, when the decision here was issued, Listing 1.04 stated:

1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging,

6

> manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App.1 § 1.04.

> In the decision, the ALJ found:
>
> The medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under Listing 1.04.  Moreover, there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b).

(R. 15).

As the Commissioner suggests in her brief, the string citation in Plaintiff's Brief does not show she meets the criteria of any of the impairments in Listing 1.04.  Nor does the court find evidence in the record which the ALJ found lacking:  evidence of nerve root compression, spinal arachnoiditis, lumbar spinal stenosis, or inability to ambulate effectively.  Counsel does his client no service by listing at least twelve operative facts in one sentence dealing with at least two of the applicable listings and then citing 41 individual places in the record where portions of the operative facts might be found.  At the very least there should be a citation to the record evidence following each operative fact, so that the court might perceive the rationale that has been followed to assert that a

7

criterion has been met.  Perhaps the best way to demonstrate error is to list each criterion of one listed impairment and to individually cite record evidence that each criterion has been met.  If counsel continually provides string citations which do not demonstrate the proposition for which they are cited, he runs the real potential that the court will miss the key evidence in a case where the evidence actually supports his argument—much as the village ignored the boy who continually cried wolf, in the fable, The Boy Who Cried Wolf.

### B.      Listings 12.04, 12.06, and 12.08

As relevant here, the regulations require the following criteria for Listings 12.04, 12.06, and 12.08:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
>> 1. Understand, remember, or apply information (see 12.00E1).
>>
>> 2. Interact with others (see 12.00E2).
>>
>> 3. Concentrate, persist, or maintain pace (see 12.00E3).
>>
>> 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06, 12.08.

> OR

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

8

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06.  Notably, there is no Paragraph C in, and no Paragraph C criterion for, Listing 12.08.

The ALJ acknowledged Plaintiff's impairments include depression and bipolar disorder, Listing 12.04; anxiety, Listing 12.06; and borderline personality disorder, Listing 12.08.  (R. 14, 16)  However, he found Plaintiff's impairments do not meet the Paragraph B criteria of the listings or the Paragraph C criteria of Listings 12.04 and 12.06.  (R. 16-17)  Plaintiff argues she is markedly limited in interacting with others because she "was fired from two jobs and was charged with assault and battery for incidents where she blacked out," she is markedly limited in concentrating, persisting, or maintaining pace because "[s]he cannot persist in most activities for more than a few minutes, or an hour at the most (Pl. Br. 22), and she is markedly limited in adapting or managing herself because she "relies on others, including medical professionals, her boyfriend, and a friend to manage herself and her daily life."  Id. at 23.

Plaintiff's alleged bases of marked limitations in each Paragraph B criterion are clearly evidence of some limitation in each criterion.  However, the ALJ provided his rationale for finding only moderate limitation in each criterion.  In the criteria for

interacting with others and of concentrating, persisting, or maintaining pace, the ALJ acknowledged the limitations alleged by Plaintiff but went on to explain why he found Plaintiff no more than moderately limited.  (R. 16) (interacting with others, "However, the claimant also reported that she spent time with other people including family and friends approximately three times a week.  She did not go anywhere on a regular basis but did not need someone to accompany her when going out."  concentrating, persisting, or maintaining pace, "However, she also reported that she could handle her finances including paying bills, counting change, handling a savings account, and using a checkbook or money orders.").  With regard to adapting or managing oneself, the ALJ noted his rationale for finding a moderate limitation:

> In her Function Report, the claimant indicated that she performed the household cooking, cleaning, and laundry (Exhibit C4E).  She indicated that she was able to prepare simple meals and do small amounts of laundry and cleaning at one time.  She also shopped in stores a few times a week for groceries, household items, clothing, and craft items.  She denied having any problems tending to personal care such as bathing or dressing.  The claimant also reported that it took her a couple weeks to adjust to changes in routine and did not respond well to stress.

(R. 16-17).  Plaintiff has cited to record evidence tending to suggest limitations in each of these three Paragraph B criteria.  But, she does not explain why this evidence compels finding marked limitation in each criterion.  Perhaps more importantly, the ALJ found Plaintiff's allegations of symptoms not consistent with all of the evidence and Plaintiff does not explain why her allegations and understanding of the evidence compels a finding different than the ALJ.  Plaintiff's rationale for finding marked limitations, along

10

with her string citation of record evidence for each rationale suggests she would like the court to reweigh the evidence and substitute its judgment of severity for that of the ALJ. Absent evidence which <u>compels</u> a different finding, the court may not do so.  <u>Bowman</u>, 511 F.3d at 1272; <u>Hackett</u>, 395 F.3d at 1172.

Plaintiff's argument regarding the Paragraph C criteria is to a similar effect, and the court will not repeat its consideration here.

## III.    Medical Opinions

Plaintiff claims the ALJ erred in finding the medical opinions of Ms. Peckham-Wichman, APRN; Mr. Byarlay, LSCSW; and Dr. Verner[3] unpersuasive.  Plaintiff argues "the ALJ substituted his own medical judgments in place of the evidence of record" in finding these medical opinions unpersuasive and the prior administrative medical findings of the state agency medical and psychological consultants partially persuasive. (Pl. Br. 26).  Plaintiff reiterates the opinions of the health care professionals.  (Pl. Br. 26-27).  She then argues the state agency consultants' findings were consistent with the record (without citing any record) and consistent with Ms. Peckham-Wichman's and Mr. Byarlay's medical opinions.  <u>Id.</u> at 27.  She concludes, "Had the ALJ given appropriate weight to any of the medical professionals, then the ALJ would have found that

---

[3] The ALJ made several typographical errors here.  He called Ms. Peckham-Wichman, "Peckham Wickman," Dr. Verner, "Werner," and denominated Mr. Byarlay a Licensed Clinical Social Worker (LCSW) rather than a Licensed Specialist Clinical Social Worker (LSCSW).  <u>Compare</u> R. 20-21, <u>with</u> R. 433-34, 468-69, 472.

Plaintiff's impairments cause Plaintiff disabling limitations." Id.  Later, when arguing the ALJ erred in assessing RFC, Plaintiff argues the ALJ erred in finding Ms. Peckham-Wichman's and Mr.Byalar's opinions inconsistent with mental status examination in their records because the examinations noted several times "that Plaintiff appeared nervous, she had an anxious affect and mood, and her speech was pressured and loud." Id. at 30.

The Commissioner argues the ALJ applied the correct legal standard which became effective in 2017 before Plaintiff's application was filed.  (Comm'r Br. 10).  She argues the evidence supports the ALJ's findings Ms. Peckham-Wichman's, Mr. Byarlay's, and Dr. Verner's medical opinions are not persuasive.  Id. at 11, 13-14.  She argues Plaintiff provide no meaningful analysis to support her arguments in this regard and that the court "should not accept Plaintiff's conclusory assertions." Id. at 12.  She concludes, "Under the deferential standard of review, the Court [sic] must affirm the ALJ's decision that Plaintiff was not disabled because that decision is supported by substantial evidence." Id. at 14.

A.      **Standard for Evaluating Medical Opinions and Prior Administrative Medical Findings**

As the Commissioner's Brief suggests, effective March 27, 2017 the SSA promulgated new regulation regarding the consideration of medical evidence.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 2017 WL 168819 (SSA Jan. 18, 2017).  Those regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for

claims filed on or after March 27, 2017." 20 C.F.R. § 416.920c (2017). That regulation

provides that the Commissioner "will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s), including those from [claimant's] medical sources." 20 C.F.R. § 416.920c(a)

(2017). The regulation provides that the SSA will consider each medical source's

opinions using five factors; supportability, consistency, relationship of source to

claimant, specialization, and other factors tending to support or contradict a medical

opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(a)(c)(1-5) (2017).

It provides that the most important factors in evaluating persuasiveness are supportability

and consistency. Id.

The regulation explains that the decision will articulate how persuasive the SSA

finds all medical opinions and prior administrative medical findings. 20 C.F.R.

§ 416.920c(b) (2017). The articulation requirement applies for each source, but not for

each opinion of that source separately. 20 C.F.R. § 416.920c(b)(1) (2017). It requires

that the SSA "will explain how we considered the supportability and consistency factors

for a medical source's medical opinions or prior administrative medical findings in your

determination or decision. We may, but are not required to, explain how we considered

the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we

articulate how we consider medical opinions and prior administrative medical findings in

your case record." 20 C.F.R. § 416.920c(b)(2) (2017). The regulation explains that when

13

the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  20 C.F.R. § 416.920c(b)(3) (2017).  Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources.  20 C.F.R. § 416.920c(d) (2017).

The SSA explained why it changes the regulations:

> To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions and less on weighing treating relationships against each other.  This approach is more consistent with current healthcare practice.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017) (emphasis added).

> By moving away from assigning a specific weight to medical opinions, we are clarifying both how we use the terms "weigh" and "weight" in final 404.1520c(a), 404.1527, 416.920c(a), and 416.927 and also clarifying that adjudicators should focus on how persuasive they find medical opinions and prior administrative medical findings in final 404.1520c and 416.920c.  Our intent in these rules is to make it clear that it is never appropriate under our rules to "credit-as-true" any medical opinion.

Id., 82 Fed. Reg. at 5,858.

**B.**      **The ALJ's Findings**

The ALJ found Ms. Peckham-Wichman's opinion unpersuasive because it was unsupported by her own treatment notes, and inconsistent with record evidence including

Plaintiff's activities of daily living, "obtaining seasonal employment, attending parties, socializing with friends, going to church, and regularly engaging in recreational hobbies." (R. 20).  He found Mr. Byarlay's opinion unpersuasive because it was unsupported by his treatment notes which did not document objective examination findings and it was inconsistent with the mental status examinations which are in the record.  Id. at 21.  He also found Dr. Verner's opinions unpersuasive because "they are unsupported by the doctor's own treatment reports, which consistently demonstrated negative straight leg raising, normal motor functioning, normal gait pattern, and grossly intact sensation … [and] are also inconsistent with the objective imaging studies of record, which consistently demonstrated only mild lumbar degenerative disc disease."  Id.  The ALJ also considered the prior administrative medical findings of the state agency medical consultants and psychological consultants.  Id.  He found these opinions only partially persuasive and explained they "are supported by [the consultants'] explanation of the evidence that they considered in determining the claimant's functional limitations."  Id. He found the medical consultants' opinions "are fully consistent with the claimant's history of back pain and obesity while also considering the mild findings on objective imaging studies, lack of neurological deficits, and reports that her pain was adequately controlled with improvements in functioning and quality of life throughout participation in pain management."  (R. 21).  But he discounted the psychological consultants' opinions because they "are less consistent with the overall record, which demonstrates a

15

capacity for more than one to two-step instructions, as the claimant endorsed engagement in various activities of daily living including the ability to drive an automobile, complete household chores and cooking, socialize with friends, perform seasonal work, and attend church." Id.

### C.   **Analysis**

Plaintiff does not explain in what way the ALJ substituted his judgment for the record evidence or for the medical judgment of the medical and psychological professionals.  To the extent the explanation is the ALJ disagreed with their medical opinions, that misunderstands the law and the ALJ's responsibility.  "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004)); Wall, 561 F.3d at 1068-69). The narrative discussion required by Social Security Ruling (SSR) 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed.  Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011).  "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011).  There is no need in this case, or in any other, for the Commissioner to base the

16

limitations in his RFC assessment upon specific statements in medical evidence or opinions in the record.

It is the ALJ's responsibility to evaluate the evidence and assess RFC.  "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  SSR 96-8p, 1996 WL 374184 at *2 (SSA July 2, 1996).  The Commissioner has provided eleven examples of the types of evidence to be considered in making an RFC assessment, including:  medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations.  Id. 1996 WL 374184 at *5.

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at *5 (July 1996)).  Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26,

17

1999); 20 C.F.R. § 416.945(a).  Moreover, the final responsibility for determining RFC

rests with the Commissioner.  20 C.F.R. §§ 416.927(e)(2), 416.946.

Plaintiff's argument that the ALJ should have given "appropriate weight" to the

opinions misunderstands the current regulation on evaluating medical opinions or prior

administrative medical findings.  The SSA has gone from relative weighing of such

opinions to evaluating their persuasiveness.  Here, the ALJ explained how persuasive he

found each opinion and provided the bases for his evaluation.  As required by the

regulations, he articulated his specific evaluation of the supportability and consistency

factor relating to each opinion.  (R. 20-21).  Plaintiff disagrees but does not point to

evidence compelling a different result.  Plaintiff's argument that "on several occasions …

Plaintiff appeared nervous, she had an anxious affect and mood, and her speech was

pressured and loud" (Pl. Br. 30), while true, does not suggest—much less compel—

finding <u>disabling</u> limitations.  Plaintiff has shown no error in the ALJ's evaluation of the

opinion evidence.

## IV.  RFC Assessment

Plaintiff claims the ALJ erred in assessing RFC.  She argues:

The ALJ did not have evidence of the claimant's physical functioning that
supported the limitations he assessed in the physical RFC. And the medical
evidence shows greater limitations than the ALJ assessed. For example,
despite consistent treatment, physical examinations of the claimant
consistently showed diminished range of motion, tenderness on palpatation
[sic], paraspinal muscle spasms and tenderness, loss of normal lumbar
lordosis, and gluteal tenderness.  The claimant attended pain management
regularly during the relevant period and the medical records indicated that

moving, positioning, weather changes, prolonged sitting or lying, extended periods of walking or standing, and lifting moderate to heavy weight aggravated her pain.

(Pl. Br. 28) (citations omitted).

The Commissioner responds that the ALJ adequately explained his RFC finding, reviewing "the evidence in detail, including Plaintiff's statements, the objective evidence, and the medical opinion evidence, and determined that Plaintiff was capable of a restricted range of light work." (Comm'r Br. 15). She argues, "Plaintiff wishes the ALJ had read the evidence differently and wants the Court [sic] to grant that wish. But the question for the Court [sic] is whether substantial evidence supported the ALJ's decision, not whether substantial evidence could have supported a different outcome." Id. emphasis in original.

Again, Plaintiff is correct that the evidence shows the facts alleged above. However, diminished range of motion, tenderness on palpitation, paraspinal muscle spasms and tenderness, loss of normal lumbar lordosis, and gluteal tenderness do not equate to disability on their face. Moreover, Plaintiff does not cite and the ALJ did not find evidence of disabling functional limitations resulting from these factors. Finally, the fact that certain conditions aggravate Plaintiff's pain does not amount to a disabling limitation. The question for the ALJ was not whether Plaintiff experiences pain or whether that pain might be aggravated by certain conditions. Rather, the question is whether Plaintiff's pain is of disabling severity. The ALJ found that under the limitations

19

and conditions specified in the RFC assessed Plaintiff's pain is not of disabling severity. Plaintiff believes it is, but such evidence in the record as a reasonable person would believe supports the ALJ's finding, and Plaintiff does not point to record evidence which compels a contrary finding.

        **IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

        Dated June 6, 2022, at Kansas City, Kansas.




                                        s/ John W. Lungstrum
                                        **John W. Lungstrum**
                                        **United States District Judge**

20